IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**DIANESIA BLACK,**

    **Plaintiff,**

vs.                        **Civil Action No.**_____
                                  **JURY DEMANDED**

**K.T.G. (USA), Inc., a Foreign
Corporation now doing business as
KRUGER TISSUE GROUP,**

    **Defendant.**

## COMPLAINT

This is an action alleging discrimination on the basis of sex, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended.

### I.    INTRODUCTION

1.    This action is brought pursuant to Title VII, 42 U.S.C. § 2000e, et seq., as amended, for discrimination based on sex in the terms and conditions of her employment, to vindicate Plaintiff's rights, and to make Plaintiff whole.

2.    This action is further brought pursuant to Title VII, 42 U.S.C. § 2000e, et seq., as amended, for retaliation for having engaged in protected activities, including internal complaints with her employer.

3. In this action Plaintiff contends that she has been subjected to quid pro quo sex harassment from her direct supervisor, who demanded that she date him and have sex with him. In exchange she would be treated more favorably. If she did not, she would be fired.

4. In this action Plaintiff further contends that she has been subjected to a hostile work environment on account of sex and retaliation. Said hostile work environment is severe and/or pervasive, has altered the conditions of Plaintiff's employment and has created an abusive work environment. Plaintiff finds said harassment extremely offensive, and physically and emotionally threatening. Said hostile environment/harassment has unreasonably interfered with the Plaintiff's work performance. Defendant has known of the hostile work environment but has failed to implement prompt and appropriate corrective action.

5. In this action Plaintiff further contends that she complained to her supervisor's manager about the sex harassment/hostile work environment, and also to the Human Relations Department. No investigation was conducted, and no remedial action of any kind was taken in response to her internal complaints. Thereafter, she was subjected to repeated mechanical aptitude tests, all of which she passed. The Defendant refused to allow her to complete the drug test. As a result she was not hired as a permanent employee. On April 21, 2011, Plaintiff

was discharged, allegedly for attendance problems. The person who fired her was the harassing supervisor.

## II.   JURISDICTION AND VENUE

6. Jurisdiction is conferred on this court under the provisions of Title VII, 42 U.S.C. § 2000e-5(f)(3), and pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is appropriate in this district inasmuch as Defendant K.T.G. - USA (Kruger Tissue Group) is subject to the jurisdiction of this court and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, pursuant to 28 U.S.C. § 1391 (b) and (c).

## III.   CHARGING PROCESS

8. Black timely filed her Charge of Discrimination (No. 490-2011-01985) with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2011. Said charge is attached hereto as Exhibit "A." The Right to Sue Notice is dated June 29, 2012, and is attached hereto as Exhibit "B."

9. Plaintiff has exhausted her administrative remedies.

10. This action is timely filed.

## IV.   PARTIES

11. Plaintiff Dianesia Black (hereinafter "Black") is an adult female citizen of the United States, who is a resident of Shelby County, Tennessee and who works in Shelby County, Tennessee.

12. Defendant K.T.G. – USA (Kruger Tissue Group) is, upon information and belief, a corporation authorized to do business in, and with offices located in Memphis, Tennessee. Defendant can be reached for service of process through its registered agent, CT Corporation System, 800 Gay Street, Suite 2021, Knoxville, TN 37929. Hereinafter the Defendant is referred to as "KTG."

## V. FACTS

13. Black began working at K.T.G. as a temporary employee in August, 2010. She was placed at K.T.G. by a temporary agency, Pro Logistics. Her position at hire was: Shipping Coordinator.

14. Her job performance has been uniformly above average. Her attendance was good.

15. Black's immediate supervisor was Darrell Anderson, Supervisor in the Shipping Department at K.T.G.'s Memphis plant. Anderson at all relevant times was a member of management.

16. Shortly after Black started working in shipping, Anderson commenced flirting with her. He would touch her on the back. On occasions he put his arms around her shoulders. He hugged her. When Black was seated at her desk, Anderson would run his fingers through her hair. The attentions were unwanted, and offended Black. She told him to stop, but he did not.

17. Anderson repeatedly asked Black to go to lunch with him. He repeatedly asked her to go out in the evenings on dates. Black

repeatedly said no, that she did not want a relationship with him. Anderson however did not stop. He approached Black several times a day; he was persistent. Anderson made it clear to Black that he wanted to have sex with her, not just a companion over a meal. He told Black that if she would go out with him, and go to bed with him, he would do things for her, including making sure that she would get a permanent (not a temporary) job, and that she would not have to repeat any aptitude tests.

18.    Despite Black's repeatedly refusing Anderson's advances, he kept harassing her. His activities and his demands interfered with her ability to perform her job. He distracted her; he offended her; he took up her time and attention. When she rebuffed him he would become angry, at which time he would tell her that if she did not do as he asked, he would fire her. He sometimes would say, "If you don't go out with me or sleep with me, you're gonna go out to the brick." Black reasonably understood this was a threat to fire her.

19.    Anderson's sexual harassment was blatant and overt. He would inappropriately touch Black in front of other employees. He would demand that she date him or have sex with him within the hearing of other employees. He made threats to Black in front of other employees, including "You can be walked out of her." Anderson's threats to Black were more often. Black was mortified that her co-workers saw and heard

what Anderson was doing. She felt humiliated and embarrassed. She felt powerless.

20. Black went first to Anderson's Manager, Jerry Butler, and told him what Anderson was doing, and that she could not take the constant harassment. Butler, a member of management, did nothing in response to Black's complaints to him of sex harassment.

21. Black believed that Butler had reported her complaints to Pat Wilson, from the K.T.G. Human Resources office. Wilson took no action at that time, to Black's knowledge and belief.

22. As a temporary employee, Black was required to take and pass a mechanical aptitude test, followed by a drug test. Black took the aptitude test. Anderson told her she had passed it. But after she made the complaint to Jerry Butler, Anderson informed Black that she had to re-take the test. That is when Black went directly to the Human Resource Department and complained to Human Resources about the sex harassment, the hostile environment, and the retaliatory demand that she re-take the test. The Human Resource representative, Ashley Samples, responded that she had to re-take the test because her score was so high: Samples said to Black, "Black women don't normally score that high on this test." Black then complained to Samples' supervisor, Pat Wilson, who acknowledged to Black that Samples' comment was exposing the company to a lawsuit. She said, "Ashley was wrong to say that."

23. At Anderson's demand, Plaintiff re-took the test, and was later told by Anderson that she did not pass the test, although he told other employees she had passed. Black had indeed passed the test. Pat Wilson later acknowledged that Black had passed, that her score was about the same. Anderson further denied Black the opportunity to take the required drug test.

24. Despite Black's complains to Human Resources about the sex harassment, the hostile environment and the retaliation, Human Resources did nothing meaningful to remedy the problem. No meaningful investigation was made. The Human Resource Department condoned Anderson's activities, and reported to Pro Logistics that Black had an attendance problem, a statement with no basis in fact.

25. Black learned of the attendance allegation and complained to Jerry Butler. He acknowledged to her that there was no attendance problem. He said, "Let me talk to Darryl [Anderson]." Thereafter he texted to Black, "We're gonna let Darryl's decision stand," meaning Darryl's decision to terminate Black, which occurred on April 21, 2011.

26. To Black's information and belief, Anderson had a history of harassing females before Black was hired by K.T.G. Said history is well-known by K.T.G. Further, Anderson was terminated by K.T.G. in late December 2011 or early January 2012. Yet K.T.G. did nothing to protect Black from this predator.

27. Thus, once Black filed her first internal complaint regarding sex harassment and hostile environment, her supervisor Anderson, began retaliating against her by making her job almost impossible. Anderson continued to sexually harass her. He caused her to have to take and re-take a mechanical aptitude test, on account of her internal complaints. He prevented her from becoming a permanent employee. He denied her the opportunity to take a required drug test. When Plaintiff went to his supervisor to make further complaints about Anderson, Anderson fired her, allegedly for attendance problems. These acts were retaliatory, for engaging in protected activities.

28. The false accusations against Black, and the sexually charged work environment, the severe and pervasive hostile environment, the overt quid pro quo sex discrimination and retaliation following her protected activities have caused Black to suffer from daily and severe headaches, abdominal cramps, shaking and nervous anxiety, episodes of crying, trouble sleeping, heart jumping, and severe depression. The symptoms and conditions were directly and proximately caused by the hostile work environment/discrimination.

29. As a direct and proximate result of the hostile and offensive work environment (sex) and retaliation perpetrated by K.T.G. and its managers and supervisors, and K.T.G.'s failure to protect Black from further harassment, Black has suffered severe emotional distress, and permanent personal injuries.

30. As a direct and proximate result of K.T.G.'s intentional discrimination against Black on the basis of said discrimination and retaliation, Black has suffered lost wages and lost benefits.

31. K.T.G., through its agents, representatives and employees, and through the acts and conduct described above, intentionally, willfully, knowingly and unlawfully created a severe and/or pervasive hostile working environment and in so doing discriminated against Black in the terms and conditions of her employment based upon sex and in retaliation for her protected activities. Said acts and conduct were offensive to Black, as they would be to any reasonable person in the position of the plaintiff.

32. As a direct and proximate result of K.T.G.'s discrimination against her, Black has suffered and continues to suffer substantial injuries for humiliation, personal injuries, emotional distress, mental anguish, embarrassment, and loss of enjoyment of life.

33. Black seeks injunctive relief to remedy the alleged wrongdoings on the basis that she has no adequate or complete remedy at law to redress the discriminatory practices of K.T.G.

**COUNT ONE**

**Sex Discrimination in Violation of Title VII**

34. Plaintiff incorporates by reference the allegations contained in all previous paragraphs of this Complaint as if fully set forth herein.

35. Defendant, through its agents, representatives and employees, intentionally willfully and knowingly discriminated against Plaintiff in the terms and conditions of her employment based upon sex discrimination and hostile environment on account of her sex in violation of Title VII.

36. Plaintiff seeks injunctive relief to remedy the alleged wrongdoings in that she has no adequate or complete remedy at law to redress the discriminatory practices of Defendant.

37. As a direct and proximate result of the acts and omissions of Defendant, through its agents, representatives and employees, Plaintiff has suffered substantial damages and injuries, including loss of income and benefits, humiliation, embarrassment and emotional distress, in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., as amended.

## COUNT TWO

### Retaliation in Violation of Title VII

38. Plaintiff reincorporates by reference the allegations contained in all previous paragraphs of this Complaint as if fully set forth herein.

39. Plaintiff is a member of a protected class, who engaged in protected activity, including that she complained about discrimination and opposed unlawful employment practices of the Defendant. As a result of her protected activities, K.T.G. retaliated against her and has allowed a retaliatory hostile work environment in violation of Title VII.

40. As a direct and proximate result of retaliation, Plaintiff suffered harm, including loss of income and benefits, humiliation, embarrassment and emotional distress, in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000, et seq. and as amended.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Donna Noel prays that this Court enter a judgment in her favor against the Defendant:

1. Title VII: Awarding equitable relief and injunctive relief as may be appropriate, including back pay;

2. Title VII: Reinstatement or in the alternative, awarding Plaintiff a judgment for front pay, if appropriate;

3. Title VII: Awarding Plaintiff judgment for compensatory and punitive damages in an amount not less than $300,000.00 against the Defendant;

4. Title VII: Awarding Plaintiff her reasonable attorney's fees and costs of the cause, including discretionary costs, pursuant to 42 U.S.C. § 1988;

5. Granting Plaintiff such further relief as the Court deems appropriate.

JURY TRIAL IS DEMANDED.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

*s/Kathleen L. Caldwell*, #9916
2670 Union Avenue Extended
Memphis, TN 38112
Telephone:  (901) 458-4035
Facsimile:  (901) 458-4037